IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**TREVOR LITTLE,**

    **Petitioner,**

v.                                                            Civil Action No. 2:12-cv-08385

**UNITED STATES OF AMERICA,**

    **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the petitioner Trevor Little's (hereinafter "Little") Petition for a Writ of *Audita Querela* (ECF No. 1). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### RELEVANT PROCEDURAL HISTORY

The presiding District Judge has previously observed that Little is "a seasoned *pro se* litigant who has filed numerous motions in this Court and the Court of Appeals for the Fourth Circuit . . . ." (Case No. 2:95-cr-00198, ECF No. 721). The following procedural history is relevant to the instant proceeding:

On December 7, 1995, Little was one of five defendants indicted on charges related to a drug conspiracy. On December 12, 1995, Little led law enforcement officials on a high speed chase through residential areas of Charleston, West Virginia, and eventually fled from his vehicle and fell off a 40-50 foot rock cliff while attempting to evade arrest. Little's

fall resulted in his hospitalization for approximately six days. While he was hospitalized, Little made incriminating statements in the presence of various law enforcement officials who were assigned to guard his room.[1] Such statements occurred after Little's arrest, and allegedly after he had been provided warnings concerning his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), but before he made his initial court appearance.

Prior to trial, the District Court held a two-day evidentiary hearing on Little's motion to suppress the statements he made while hospitalized. The District Court ultimately determined that Little had received the *Miranda* warnings prior to making the statements and that Little's statements were voluntary and admissible at trial pursuant to 18 U.S.C. § 3501.[2] (See ECF No. 1 at 23-29, Ex. 1). Evidence concerning these statements

---

[1] The statements Little made during his hospitalization largely implicated other individuals in drug activity, apparently in an effort to cooperate and help himself. During the course of the statements, Little specifically admitted that two other individuals known as "Uncle L" and "Quick" worked for him and that he could get them to make arrangements with some major players from New York to come to West Virginia to sell drugs. Little also repeatedly suggested that another individual known as "E" ("Edwin Spence" aka "Eric Franklin") owed him $18,000. "Uncle L" and "E" were both co-defendants of Little. Little further told the police officers that he had been dealing heroin in West Virginia and that his heroin had killed someone, and he admitted that he taught a number of people who worked for him to move and hide drugs. (*See* Case No. 2:95-cr-00918, ECF Nos. 213 and 214, *passim*).

[2] 18 U.S.C. § 3501 states in pertinent part as follows:

  (a) In any criminal prosecution brought by the United States . . . a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. * * *
  (b) The trial judge in determining the issue of voluntariness shall take into consideration all of the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration need not be conclusive on the issue of the voluntariness of the confession. * * *
  (d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone * * *
  (e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

was then presented at trial, during the government's case in chief, through the testimony of the law enforcement officials who were present at the time the statements were allegedly made. The jury also heard inculpatory testimony from other individuals who were allegedly involved in Little's drug operation, including Clinton Green, Jerry Lee Adkins, Eric Spence (Little's co-defendant), George Carter and Anthony Hairston. (*See* Case No. 2:95-cr-00198, ECF Nos. 215 and 216, *passim*).

Little was found guilty by a jury on four counts related to the distribution of cocaine base, including a conspiracy count. (Case No. 2:95-cr-00198-02, ECF 131). On July 15, 1996, Little was sentenced to three life terms and a concurrent five-year term of imprisonment. (*Id.*, ECF No. 152). Little filed a direct appeal to the United States Court of Appeals for the Fourth Circuit, challenging various aspects of the sufficiency and admissibility of evidence at trial, including the admissibility of the statements which he again challenges herein. He also argued that his due process rights were violated because the indictment did not state a quantity of drugs and, therefore, did not notify him that he might be subjected to enhanced penalties. On September 11, 1997, the Fourth Circuit affirmed Little's convictions and sentences. *See United States v. Little*, Nos. 96-4569, 96-4586, 122 F.3d 1064 (4th Cir., Sept. 11, 1997) (unpublished) (*Id.*, ECF No. 278).

Little filed a petition for rehearing *en banc*, which was denied on October 23, 1997 (*Id.*, ECF No. 287), and the Fourth Circuit issued a mandate affirming the judgment of the District Court on November 3, 1997. (*Id.*, ECF No. 288). Little then sought a writ of certiorari to the Supreme Court, which was denied on February 23, 1998. (*Id.*, ECF No. 306).

On February 16, 1999, Little filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, raising various allegations of ineffective assistance of counsel.

However, the section 2255 motion did not in any way address the issue of the admissibility of Little's statements following his arrest. *See Little v. United States*, Case No. 2:99-cv-0123, ECF No. 356). The section 2255 motion was denied on September 30, 1999. (*Id.*, ECF No. 374). Little unsuccessfully challenged the denial of his section 2255 motion via subsequent motions to alter, amend or set aside judgment and appeals therefrom. He has also filed various motions to correct or modify his sentence under Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c), which have, thus far, been unsuccessful.

On November 29, 2012, Little filed the instant Petition for a Writ of *Audita Querela* (ECF No. 1), in which he seeks a writ granting him a new trial. There appear to be two bases for the petition. First, Little claims that he is entitled to a new trial because the District Court was not presented with evidence indicating that Little suffered a concussion as a result of his fall from the cliff and overlooked the effect that such a head injury and heavy medication had on the voluntariness of his statements. Little's petition also asserts for the first time in any proceeding that he requested counsel while he was hospitalized. Little now contends that presentation of this evidence would have affected the District Court's determination that his statements were voluntary and admissible at trial.[3]

Second, Little contends that he is entitled to a writ of *audita querela* granting him a new trial because, subsequent to his conviction, direct appeal, and section 2255 motion proceedings, the United States Supreme Court decided *Dickerson v. United States*, 530 U.S. 428 (2000), which held that the constitutionally-based decision in *Miranda* governs the admissibility of statements made during custodial interrogation, and effectively

---

[3] The District Judge who presided over Little's criminal trial, the Honorable Charles H. Haden II, is deceased.

4

nullified 18 U.S.C. § 3501 in the context of custodial interrogation. Invoking *Miranda*, the *Dickerson* Court found that § 3501's "totality-of-the-circumstances" test of voluntariness, which omitted a warning requirement, or at least considered it as only one factor of admissibility, presented an unreasonably great risk of admission of an involuntary custodial confession. 530 U.S. at 443. Little appears to assert that the *Dickerson* decision changed the legal landscape from the time of his suppression hearing, justifying review because there is a reasonable probability that he would not have been convicted if his statements had been ruled inadmissible under *Miranda*.

Because it is apparent from the face of the petition and evidence from the record of his criminal proceedings that Little is not entitled to the requested relied, the undersigned has not ordered a response from the United States.

## ANALYSIS

A writ of *audita querela* (meaning "the complaint having been heard") is a writ stemming from English common law that serves to permit a defendant who has had a judgment rendered against him to seek relief of the consequences of such judgment when some new evidence or legal defense not previously available renders enforcement of the judgment "contrary to justice." 7A C.J.S. *Audita Querela* § 1 (2015); 7 AM. JUR.2d *Audita Querela* § 1 (2015). This writ has been abolished in the context of American civil litigation and it has limited applicability in federal criminal post-conviction procedure. 7 AM. JUR.2d *Audita Querela* § 2 (2015).

It is well-settled that the writ of *audita querela*, which arises under the court's authority under the All Writs Act, 28 U.S.C. § 1651, "does not provide a purely equitable basis of relief from an otherwise valid criminal conviction." *United States v. Johnson*, 962 F.2d 579, 583 (7th Cir. 1992). Rather, the writ of *audita querela* remains available

only in "certain narrow circumstances, as where there is a legal objection to a conviction that has arisen post-sentencing and for which there is no other remedy." *Townsend v. United States*, 38 F. Supp.2d 424 (D. Md. 1999). For example, in *United States v. Zaldivar-Fuentes*, No. 5:05-cr-00007-8, 2009 WL 1347049 (W.D. Va. May 12, 2009), the court held:

> The writ of *audita querela* is used to challenge "a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." *United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991). The writ is not available to an inmate when other remedies exist, such as a motion to vacate sentence under § 2255. [Citations omitted.] <u>The fact that a particular prisoner was or would be unable to obtain relief under § 2255 because of a procedural bar does not render the statute an inadequate or ineffective remedy so as to open the door to an extraordinary writ under § 1651.</u> *See, e.g., In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000).

2009 WL 1347049 *1 (emphasis added).

### A. The concussion evidence and the alleged request for counsel.

Little challenged the admissibility of his statements in a pre-trial motion to suppress. In denying Little's motion to suppress, the District Court made factual findings that, although Little testified that he does not recall being given his *Miranda* warnings at the time of his arrest, the evidence demonstrated that he was given such warnings by Captain Steve Harper and Little acknowledged that he knew what his *Miranda* rights were, having been previously arrested. (Order, ECF No. 1 at 28, "Exhibit 1"). The District Court further found that, although Little was on various pain medications, all of the law enforcement officials and medical providers who testified at the suppression hearing attested that Little was alert and coherent at the time he made the statements in question. (*Id.* at 24-27). In fact, the District Court specifically concluded as follows:

> While the Defendant was under significant medication throughout his hospital stay, Nurse Fourney testified reaction to medication is case specific. Ms. Fourney and all other witnesses testified the Defendant at all times

> appeared to be alert, responsive, and extremely talkative, often volunteering information including inculpatory statements.

(*Id.* at 28). However, based upon the record from the suppression hearings, the District Court was not presented with any evidence that Little suffered a concussion.[4] The doctor who testified during the suppression hearing, Dr. Mark Anthony Choeuiri, stated that he did not recall any diagnosis of a concussion. (Case No. 295-cr-0198, ECF No. 214 at 36). Apparently, however, Little was also treated by a second physician, Dr. Frederick H. Armbrust, who did not testify at the suppression hearing, but who has now provided an affidavit stating that he ordered a CT scan on Little which indicated that Little had suffered a concussion, which may have affected his ability to recall things for approximately one hour after his injury. The Armburst Affidavit states as follows:

1. I examined Mr. Trevor Little at the Charleston Area Medical Center on December 13, 1995, and a copy of my Consultation Summary is attached hereto as "Exhibit A."

2. As a result of my physical examination of Mr. Little and my review of Mr. Little's history and medical records, I found that Mr. Little suffered a concussion on December 12, 1996 [sic; 1995].[5]

3. Based upon a standard of reasonable medical certainty, it is my opinion that a concussion will typically cause a loss of memory or disorientation for up to one hour following the impact or trauma which caused the concussion.

4. Based upon a standard of reasonable medical certainty, it is my opinion that Mr. Little suffered some degree of loss of memory or disorientation during the period immediately following the impact or trauma which caused his concussion.

---

[4] During the suppression hearing, Little's counsel, Christopher Heavens, did question several witnesses about whether they were aware of any evidence that Little had suffered a concussion and whether they believed that such evidence would have an impact on his ability to be coherent. However, Heavens did not present any specific evidence thereof during the suppression hearing or at trial. (*See* ECF No. 214 at 36, 98).

[5] The undersigned believes this to be a typographical error as Little's fall occurred on December 12, 1995.

(Affidavit of Frederick H. Armbrust, M.D., ECF No. 1 at 30, "Exhibit 2").

The Consultation Summary attached to the Affidavit as "Exhibit A" indicates that Little had a "cranial CT scan, which demonstrates no intracranial abnormality." (Consultation Summary, ECF No. 1 at 32-33, "Exhibit A").  However, the "History" section of the summary states that "the patient had transient loss of consciousness."  (*Id.*)  The "Impression" section of the summary states "Concussion."  (*Id.*)  Little has also included an excerpt from *Wikipedia* on "Post-concussion syndrome," dated 11/5/2012, which suggests that a concussed person may exhibit a "set of symptoms [including cognitive or mental impairments such as memory and attention problems] that may continue for weeks, months or occasionally a year or more after a concussion . . ." (ECF No. 1 at 34-36, "Exhibit 3").  Little's petition asserts that the evidence of a concussion and heavy medicine intake, and his alleged disorientation at the time we was advised of his *Miranda* warnings, calls into question whether his statements were the product of rational intellect and free will, and whether they should now be declared inadmissible as a result thereof.  (ECF No. 1 at 14-20).

Although such evidence was apparently not presented to the District Court, the Consultation Summary and CT scan evidence was available at the time of the suppression hearing and throughout Little's criminal proceedings.  Thus, it is not "new evidence." Accordingly, it would appear that Little's request for a writ of *audita querela* on the basis of the concussion evidence is foreclosed by the fact that such evidence was available to him throughout the course of his criminal proceedings, his direct appeal, and his section 2255 proceedings, yet he failed to raise that particular issue at any of those stages. Accordingly, such claim is procedurally defaulted and barred from review at this stage. Little has not demonstrated cause and prejudice for his procedural default or that he is

actually innocent of his crimes of conviction. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may only be raised on collateral review if the defendant can first demonstrate "cause" for the default and "actual prejudice" therefrom or "actual innocence"); *see also United States v. Sanders*, 247 F.3d 139, 144-145 (4th Cir. 2001). The same is true for Little's assertion that he requested counsel while he was hospitalized.[6] His failure to specifically raise an alleged Sixth Amendment violation until now also forecloses his ability to seek relief on that basis.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the evidence that Little may have suffered a concussion prior to making the subject statements, does not present one of the certain narrow circumstances necessary to justify the issuance of a writ of *audita querela*.

### B. Implications of *Dickerson*.

The determination of whether a confession is admissible in evidence is governed by the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). Prior to *Miranda*, admissibility of a suspect's confession was evaluated under a voluntariness test, arising out of the theory that a coerced confession is inherently untrustworthy and the admission thereof would violate due process. *Id.* "The due process test takes into consideration 'the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Id.* at 434.

---

[6] Presumably, Little is attempting to argue that any statements he made to law enforcement after his alleged request for counsel are inadmissible. *See Massiah v. United States*, 377 U.S. 201, 2206 (1964) (the use in evidence by the government of incriminating statements that were deliberately elicited from a defendant after indictment in the absence of counsel violates the Sixth Amendment); *see also Fellers v. United States*, 540 U.S. 519, 523 (2004).

The Supreme Court noted in *Dickerson* that it has "never abandoned this due process jurisprudence and thus continue[s] to exclude confessions that were obtained involuntarily." *Id.* However, in *Miranda*, the Court "changed the focus of much of the inquiry determining admissibility of suspects' incriminating statements[,]" and concluded that "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" *Id.* at 434-435 (citing *Miranda*, 384 U.S. at 455-439). Therefore, *Miranda* found that certain procedural safeguards (*i.e.*, warnings concerning the right to remain silent and the right to counsel) are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination.

Two years after *Miranda*, Congress enacted 18 U.S.C. § 3501, discussed *supra* in footnote 2. 530 U.S. at 435. In *Dickerson*, however, the Supreme Court ruled that Congress may not legislatively supersede the Court's decisions interpreting and applying the United States Constitution. *Id.* at 437. Consequently, while *Miranda* does not dispense with the due process inquiry into the voluntariness of a confession, the Court held that the dictates of *Miranda* and its progeny govern the admissibility of statements made in custodial interrogation in both state and federal court.

Thus, the only operative issue before this court appears to be whether, in light of *Dickerson*, the District Court improperly admitted Little's statements under *Miranda*, thus warranting a new trial. The undersigned notes, however, that *Miranda* applies only in the context of "**custodial interrogation**." 384 U.S. at 444.

In *Rhode Island v. Innis*, the Supreme Court discussed the dictates of *Miranda* and defined custodial interrogation as follows:

10

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either *express questioning or its functional equivalent.* That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

446 U.S. 291, 301 (1980) (emphasis added). The *Innis* Court further emphasized the following statement from *Miranda*:

> "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . .*Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." [384 U.S.] at 478, 86 S. Ct. at 1630.

446 U.S. at 299-300.

Based upon a thorough review of the testimony offered at the suppression hearing and at trial, it is clear that, although Little was considered to be in custody while he was hospitalized, the statements he made were not made during the course of "express questioning or its functional equivalent." Rather, the evidence clearly indicates that Little initiated conversations with each of the police officers who were assigned to guard him and volunteered his statements without any questioning or prompting from the officers.

Each of the officers of the Metro Drug Task Force who guarded Little in the hospital (Detective Steve Harper, Detective Joseph Crawford, Detective Brian Jones, Detective Steven Neddo and Detective George Henderson) testified that Little initiated conversations with them on different subjects, some of interest to law enforcement and others that were not of any interest thereto. More importantly, they testified that during these conversations, Little was alert and coherent. Detective Crawford stated that when

11

Little made statements that interested him as a police officer, he asked Little if he understood his rights and Little told him that he understood his rights. (Case No. 2:98-cr-00198, ECF No. 213 at 35).[7]  Detective Neddo testified that when Little began discussing the case, Neddo advised him that the case was in limbo, that he (Little) was under arrest, but had not been arraigned, and he (Neddo) would not discuss Little's case with him until an attorney had been appointed. (*Id.*, ECF No. 213 at 84-85). Detectives Harper and Henderson also testified that Little initiated all of the conversations and volunteered information concerning the alleged drug activity. (*Id.* at 23; ECF No. 214 at 40-44, 47 52-53).[8]

Clearly, the conversations initiated by Little were not any type of custodial interrogation. Although Little was confined to a hospital bed and was in police custody, none of the officers had notepads or were prepared to write down any statements made by Little. For example, Detective Crawford testified that it was normal procedure for him to take a pad and pencil or recording device when interrogating a criminal defendant. (*Id.*, ECF No. 213 at 36-37, 49). Crawford stated that was not done in this instance because his sole purpose was to guard Little. (*Id.*)  Accordingly, there was an obvious absence of coercive actions or deliberate elicitation of information by the officers and their conduct strongly suggests this was not a custodial interrogation that warranted *Miranda* warnings.

---

[7] Crawford also confirmed that he was present at Little's arrest and witnesses Detective Harper give Little his *Miranda* warnings. (*Id.*, ECF No. 216 at 488).

[8] Henderson also testified that, after Little began talking about "Uncle L" he did ask Little if "Uncle L" was a guy in Orchard Manor in a wheelchair, but that was the only question he asked. (*Id.*, ECF No. 214 at 41, 49).

Nevertheless, even if the statements made by Little while he was hospitalized can be construed as having been made during "custodial interrogation," Judge Haden's Order denying the motion to suppress found that Little was given his *Miranda* warnings by Detective Harper at the time of his arrest, and on at least one other occasion while he was hospitalized by Detective Crawford. A review of the transcripts from the suppression hearings confirms those findings of fact. Therefore, it would appear that there was no *Miranda* violation that would warrant the suppression of those statements.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, because the statements made by Little while he was hospitalized were not made during "custodial interrogation," they do not fall within the purview of *Miranda.* Alternatively, even if the statements could be construed as having been made during custodial interrogation, Little was warned of his rights prior to making those statements, thus satisfying *Miranda*. Therefore, under the circumstances of this case, any change in the law after *Dickerson* does not qualify as one of the narrow circumstances that would justify granting a writ of *audita querela* to permit Little to have a new trial.

For the reasons stated herein, it is respectfully **RECOMMENDED** that Little's Petition for a Writ of *Audita Querela* (ECF No. 1) be **DENIED**, and that this civil action be dismissed from the docket of the court.

### C. Requests for Appointment of Counsel, Approval of Payment of Expert Witness Fees and an Evidentiary Hearing.

In ECF Nos. 4 and 5, which are docketed in this civil action number as "Additional Documentation" and not as motions), Little has made requests for the appointment of counsel under 18 U.S.C. § 3006A(a)(2), for the approval of monies to appointed counsel to pay an expert witness, and for an evidentiary hearing to be held. Because the

13

undersigned has proposed that Little's petition lacks merit and should be denied, it is further respectfully **RECOMMENDED** that the presiding District Judge **DENY AS MOOT** Little's requests for appointment of counsel, approval of payment of expert witness fees and for an evidentiary hearing.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the petitioner, and to transmit it to counsel of record.

<u>January 28, 2016</u>

Dwane L. Tinsley
United States Magistrate Judge